SO ORDERED.

Dated: September 30, 2020

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **In re:** | Chapter 11 Proceedings |
| **STAR MOUNTAIN RESOURCES, INC.,** | Case No.: 2:18-bk-01594-DPC |
| **Debtor.** | Adversary No.: 2:19-ap-00412-DPC |
| **JARED PARKER, in his capacity as Plan Trustee for the Star Mountain Plan Trust,** | |
| **Plaintiff** | **UNDER ADVISEMENT ORDER RE DEFENDANTS' MOTION TO DISMISS** |
| **v.** | |
| **TITAN MINING (US) CORPORATION, a Delaware corporation; TITAN MINING CORPORATION, a British Columbia, Canada corporation; NORTHERN ZINC, LLC, a Nevada limited liability company; EDWARD BROGAN and JANE DOE BROGAN, husband and wife; DONALD SUTHERLAND and JANE DOE SUTHERLAND, husband and wife; JOSEPH HAMILTON MARCHAL and JANE DOE MARCHAL, husband and wife; MARK OSTERBERG and JANE DOE OSTERBERG, husband and wife; WAYNE RICH and JANE DOE RICH, husband and wife; JOHN AND JANE DOES 1 – 10; BLACK CORPORATIONS 1 – 10; WHITE PARTNERSHIPS 1 – 10; and GRAY TRUSTS 1 – 10,** | **[NOT FOR PUBLICATION]** |
| **Defendants.** | |

Before this Court is the Motion ("Motion to Dismiss") of Defendants, Titan Mining (US) Corporation ("Titan US") and Titan Mining Corporation ("Titan Canada") ("Defendants"), to Dismiss All Claims of the Second Amended Complaint Asserted Against Titan Defendants.

1

Plaintiff, Plan Trustee Jared Parker ("Plaintiff"), filed Plaintiff's Response to the Motion to Dismiss ("Response") and Defendants filed their Reply ("Reply"). This Court held a hearing on the Motion to Dismiss. After considering the parties' oral arguments and briefs, this Court now denies the Motion to Dismiss for the reasons stated below.

**I. BACKGROUND**

    A. Procedural Background

On February 21, 2018, Star Mountain Resources, Inc. ("Debtor") filed its chapter 11 bankruptcy petition. On April 18, 2018, the United States Trustee appointed the official committee of unsecured creditors ("Unsecured Creditors' Committee"). The Unsecured Creditors' Committee filed its Official Committee of Unsecured Creditors' Amended Chapter 11 Plan of Liquidation ("Plan")[1] and its Amended Disclosure Statement in Support of Official Committee of Unsecured Creditors' Amended Chapter 11 Plan of Liquidation ("Disclosure Statement").[2] On July 5, 2019, this Court entered an Order Confirming Official Committee of Unsecured Creditors Amended Chapter 11 Plan of Liquidation ("Confirmation Order").[3]

On November 19, 2019, Plaintiff initiated this adversary proceeding ("Adversary Proceeding"). On May 8, 2020, Plaintiff filed the Second Amended Complaint ("Complaint").[4] This Court held a hearing on the Defendants' Motion to Dismiss on August 3, 2020. Additional time was given to file additional pleadings. Plaintiff filed his Sur-Reply[5] and Defendants filed their Response to Plaintiff's Sur-Reply.[6] Continued oral arguments on the Motion to Dismiss were heard on August 25, 2020, after which this Court took the Motion to Dismiss under advisement.

---

[1] Administrative DE 334. "Administrative DE" references a docket entry in the bankruptcy case 2:18-bk-01594-DPC.
[2] Administrative DE 335.
[3] Administrative DE 355.
[4] DE 60. "DE" references a docket entry in the Adversary Proceeding.
[5] DE 92.
[6] DE 95.

B. The Transaction

The crux of this Adversary Proceeding focuses upon a purported fraudulent transfer stemming from a December 30, 2016 Purchase Agreement ("Purchase Agreement")[7] entered into between Titan US, Northern Zinc LLC ("Northern Zinc"), Debtor, Balmat Holding Corporation ("Balmat") and St. Lawrence Zinc Company, LLC ("SLZ"). The Purchase Agreement involved Titan US's purchase of the issued and outstanding shares of Balmat ("Balmat Shares"). The Purchase Agreement defined the "Seller" of the Balmat Shares as Northern Zinc. In consideration for transfer of the Balmat Shares, Titan US agreed to (1) pay "$3,000,000 plus 50% of Pre-Closing Liabilities[,]"[8] (2) pay "$3,318,794.30…to be satisfied by the assumption of Star Mountain Debentures[,]"[9] (3) issue 2,968,900 Class A Shares of Titan[10] and (4) assume Northern Zinc's obligations under specified sections of another agreement. Significantly, the Purchase Agreement directed Titan US and/or Titan Canada to deliver all the Cash Consideration, Other Consideration and the Titan Shares directly to Debtor.[11] The balance of the Purchase Price was the Purchaser's assumption of Northern Zinc debts.

C. Debtor's Bankruptcy Filings

Debtor's schedules and statements[12] disclose Debtor's ownership of 2,968,900 shares of Titan Stock,[13] Debtor's 100% ownership interest of Northern Zinc,[14] and a note receivable due to Debtor from "Titan Mining" with a face amount of $1,025,000.[15] Debtor listed Titan Canada as an unsecured creditor on Schedule E/F with an unliquidated, disputed claim in an unknown amount arising out of a contract.[16]

---

[7] The Purchase Agreement is attached to the Motion to Dismiss as Exhibit A. DE 64.
[8] Defined in the Purchase Agreement as the "Cash Consideration."
[9] Defined in the Purchase Agreement as the "Other Consideration." The Star Mountain Debentures were defined to include two debentures issued by Debtor between March 31, 2016 and November 25, 2016 totaling $3,318,794.30.
[10] Defined in the Purchase Agreement a the "Titan Shares."
[11] See the Purchase Agreement at ¶¶ 2.2(b) and 2.4.
[12] Administrative DE 20.
[13] *Id.* at Schedule A/B, page 3 of 35.
[14] *Id.*
[15] *Id.* at page 4 of 35.
[16] *Id.* at Schedule E/F, page 11 of 25.

Debtor's statement of financial affairs disclose a legal action involving Aviano Financial Group LLC, Debtor, Bernard Guarnera, David Linsley, and Lanseborough, LLC arising from "[D]ebtor's purchase of [Northern Zinc]."[17] In part 13 of the statement of financial affairs, Debtor disclosed a connection to Northern Zinc as a business in which they were an owner, partner, member, or otherwise in control.[18]

### D. The Plan

While the Plan makes no express mention of substantively consolidating Northern Zinc and Debtor, the Plan does define "Asset(s)" to include "without limitation all rights and entitlements to the return of previously transferred or sold assets without authority, including the Balmat Mining Assets…" Further, the Plan's definition of "Balmat Mining Assets" does reference Balmat assets, "all of which were transferred or sold by the ***Debtor*** to Titan, as referenced herein" (emphasis added). Finally, the Plan defines "Causes of Action" broadly to mean:

> Any and all claims, actions, proceedings, causes of action…controversies…, rights to legal remedies, rights to equitable remedies, rights to payment and claims (as defined in Bankruptcy Code § 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, non-matured, disputed, undisputed, secured or unsecured whether identified, filed or prosecuted to date or not and whether asserted or assertable directly or derivatively, in law, equity or otherwise. Any lawsuit commenced pursuant to Bankruptcy Code §§ 544, 547, 548, 549, 550, 551 and/or 553 is included within this definition.

The Confirmation Order created a plan trust ("Plan Trust") in which the Trustee was appointed to "complete the liquidation process, including any and all litigation."[19] The Plan Trust provided for the transfer of all assets of the Debtor on the effective date of the Plan.

---

[17] *Id.* at Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, page 17 of 35.
[18] *Id.* at pages 20-21 of 35.
[19] Administrative DE 355.

E. Motion to Dismiss

i. Defendants' Motion to Dismiss

Defendants' Motion to Dismiss makes several arguments as to why Plaintiff's claims against the Defendants should be dismissed. First and foremost, Defendants argue that the Complaint does not allege that Debtor transferred any of its assets to Defendants. Defendants contend this is supported by the Purchase Agreement where "Seller" is defined as Northern Zinc and that it was Northern Zinc's assets which were the subject of the transfer to Titan US. Defendants argue that, as a threshold element, § 548 and the Uniform Fraudulent Transfer Act require that the property transferred be property of the debtor.

Second, Defendants argue that this Court lacks subject matter jurisdiction[20] because the Trustee lacks standing to pursue the claims set forth in the Complaint. Sections 544 and 548, Defendants argue, only permit the avoidance of transfers involving property of a debtor. Defendants note that the Purchase Agreement expressly involved the transfer of assets owned by Northern Zinc. Defendants contend that Northern Zinc is a legal entity separate and distinct from Debtor so neither the Trustee nor the Debtor own the causes of action asserted in the Complaint.

Third, Defendants argue that this Court lacks personal jurisdiction. Defendants note that subject matter jurisdiction is a prerequisite to personal jurisdiction and since the Court lacks the former no personal jurisdiction exists over Defendants.

Fourth, Defendants argue that Trustee cannot cure the standing deficiency by asserting claims for alter ego or piercing of the corporate veil. Defendants point out that substantive consolidation is an extreme remedy for which the Ninth Circuit requires that a number of elements to first be satisfied. Defendants also argue that the time to seek substantive consolidation has passed so Trustee should be estopped under the doctrine of *res judicata* from now asserting in this Adversary Proceeding. Defendants contend that an order substantively consolidating Debtor and Northern Zinc cannot now be entered *nunc pro tunc*.

---

[20] Defendants' Motion to Dismiss includes a statement that Defendants do not consent to this Court's jurisdiction or this Court's authority to entry final orders or judgments. Further, Defendants expressly reserved their right to request a jury trial. Defendants' Motion to Dismiss also stated that they do not waive any jurisdictional objections or arguments. See DE 64, page 2 of 17, section I.

5

Fifth, Defendants argue that the Trustee's breach of contract claims should be dismissed because those claims are purely state law claims over which this Court lacks post-confirmation subject matter jurisdiction.

Finally, Defendants argue that if this Court declines to grant the Motion to Dismiss, it should nonetheless require Trustee to first prove the alter ego or piercing the corporate veil claims.

### ii. Trustee's Response

Trustee's Response disputes Defendants' characterization of the Plan noting that Defendants improperly rely on an unpublished Ninth Circuit Bankruptcy Appellate Panel decision for the basis of their arguments. Trustee argues that the Trustee has standing to pursue these claims and this Court has jurisdiction over the claims. Alternatively, Trustee argues that it can now pursue the alter ego and piercing the corporate veil claims against Northern Zinc.

Trustee argues that the Plan recognized that Debtor was the true transferor of assets which were the subject of the Purchase Agreement. Trustee points to the language in the Plan that defines "assets" to include assets of Debtor's subsidiaries and expressly included the legal rights to challenge the subject transfer.

Trustee also argues that, under Nevada law, a successful alter ego claim would expand the property of the estate to include Northern Zinc's claims. Trustee points to Nevada cases that recognize the concept of "reverse veil piercing" and argues that the necessary elements exist in this case.

Next, Trustee argues that this Court has jurisdiction to hear Plaintiff's breach of contract claims. The breach of contract claims, Trustee contends, are based on ancillary jurisdiction because they are factually interdependent with the fraudulent transfer claims.

Finally, Trustee disagrees with Defendants' argument that a preliminary evidentiary hearing is needed to determine the validity of Trustee's alter ego or piercing the corporate veil claims.

## II. ISSUE

Whether Plaintiff's fraudulent transfer and breach of contract causes of action against Defendants must be dismissed because Northern Zinc is an entity separate and apart from Debtor and Northern Zinc, not Debtor, holds such causes of action, if any.

## III. ANALYSIS

### A. Motion to Dismiss Standard

Bankruptcy Rule 7008 applies Rule 8 of the Federal Rule of Civil Procedure. Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim, showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although detailed factual allegations are not required, the facts in the complaint, when accepted as true, must "state a claim to relief that is plausible on its face." *Id.* at 570. The plausibility standard does not require a showing of probability, it only asks for "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 662 U.S. at 678. The recital of a cause of action's elements supported by mere conclusory statements is not sufficient. *Twombly*, 550 U.S. at 555. Instead, the complaint must include "factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 556.

### B. Substantive Consolidation

Defendants argue that neither the Plan nor the Confirmation Order caused a substantive consolidation of Debtor and Northern Zinc. The Court agrees. "Orders of substantive consolidation combine the assets and liabilities of separate and distinct – but related – legal entities into a single pool and treat them as though they belong to a single entity." *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000). Substantive consolidation "enabl[es] a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." *Id.* (quoting *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1000 (2d Cir. 1975)). "While substantive consolidation includes a veil-piercing element, it is more than that." *In re Wheeler*, 444 B.R. 598, 609 (Bankr.

7

D. Idaho 2011). Substantive consolidation should be used "sparingly." *Bonham*, 229 F.3d at 767 (quoting *In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062-63 (2d Cir. 1970)). "Courts have ordered substantive consolidation in numerous procedural contexts…as long as there is notice and an opportunity to be heard. *Id.* at 765, n. 9. However, a bankruptcy trustee cannot use alter-ego or piercing the corporate veil claims to escape the rigorous requirements of substantive consolidation. *Wheeler*, 444 B.R. at 609-10.

Here, the Plan never expressly mentions substantive consolidation. Although Plaintiff argues that the effect of the Confirmation Order was to consolidate the assets of Northern Zinc with those of the Debtor and thus the Plan Trust, such consolidation was not specifically sought nor granted. Various provisions within the definitional section of the Plan does not achieve substantive consolidation. Further, although Defendants were made aware of and received notice of the Plan and the confirmation hearing, because substantive consolidation was not expressly sought by Debtor, it is understandable that Defendants did not object to the Plan on these grounds. This Court is unwilling to read the language of the Plan or Confirmation Order to effectively find substantive consolidation was accomplished.

### C. Res Judicata Effect of the Plan

Defendants next argue the Confirmation Order is final and non-appealable so the Trustee cannot now seek to substantively consolidate the Debtor and Northern Zinc. The Court agrees. "It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, according full *res judicata* effect and precludes the raising of issues which could or should have been raised during the pendency of the case…" *In re Heritage Hotel P'ship I*, 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd* 59 F.3d 175 (9th Cir. 1995). The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). A chapter 11 plan of reorganization shall, "(5) provide adequate means for the plan's implementation, such as – …. (C) merger or consolidation of the debtor with one or more persons…" 11 U.S.C. § 1123(a)(5)(C).

8

Again, the Plan did not expressly seek nor achieve substantive consolidation. Plaintiff had the information and facts available at the time of confirmation and could have sought substantive consolidation at that time. Although the Court did not "accept" Plaintiff's previously inconsistent position, it is feasible that Defendants did and that may have contributed to Defendants' decision to not object to the Plan. The fact that substantive consolidation did not occur at the time of confirmation precludes this Court from finding consolidation now or on a *nunc pro tunc* basis.

### D. Nevada Law on Piercing the Corporate Veil/Alter-Ego

Under § 548, "any transfer . . . of an interest of the debtor" may be avoided if certain elements are satisfied. "Property interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 54 (1979). Courts must also look to state law to determine whether piercing of the corporate veil is appropriate. *In re Enterprise Acquisition Partners, Inc.*, 319 B.R. 626, 634 (9th Cir. BAP 2004).

Debtor and Northern Zinc are both Nevada corporations so this Court is to apply Nevada law to determine whether certain assets are "property" and, therefore, property of the Debtor's bankruptcy estate. Under Nevada law "reverse piercing is not inconsistent with traditional piercing in its goal of preventing abuse of the corporate form." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846 (Nev. 2000). "A party who wishes to assert an alter ego claim must do so in an independent action against the alleged alter ego with requisite notice, service of process, and other attributes of due process." *Callie v. Bowling*, 160 P.3d 878, 881 (Nev. 2007). This is precisely what the Plaintiff has done in Count II of the Complaint.

The Trustee contends Debtor and Northern Zinc were one and the same on the Transaction Date and remained so at the time of the Petition Date. These allegations of the Complaint must be taken as true in connection with a Motion to Dismiss. Plaintiff's Complaint sets forth plausible claims for alter ego/piercing the corporate veil and for avoidance of fraudulent transfers and breach of contract. It is not for the Court to agree or disagree with these allegations at this stage. This is a "property of the estate" question. Plaintiff wants the Court to find the causes of action were property of the estate per the language of the Plan, Disclosure Statement and/or the

9

Confirmation Order. Such language is but a piece of the puzzle which this Court needs to evaluate to determine what exactly was property of Star Mountain before bankruptcy and at the time of the Confirmation Order. Plaintiff's alter ego Count II claims are the vehicle through which the full puzzle is to be solved. Evidentiary issues exist but Count II of the Complaint is well pled in this regard. The Motion to Dismiss must be denied. These issues must be tried or resolved by dispositive motion if it later appears there are no genuine issues of material fact..

### E. *Wardle* and *American International Refinery*

Defendants contend that this Court should follow the Ninth Circuit's Bankruptcy Appellate Panel's holding in *Wardle*.[21] Defendants note that, applying *Wardle*, "a bankruptcy trustee cannot create standing to assert bankruptcy avoidance actions arising from transfers by non-debtor entities through assertion of an 'alter ego' claim." While this Court follows the Ninth Circuit BAP's published opinions[22] (unless the District Court for the District of Arizona has a contradicting ruling), the *Wardle* decision is not a published opinion. *Wardle* is not binding on this Court.

Plaintiff cites a more factually similar decision from the Bankruptcy Court for the Western District of Louisiana. In *American International Refinery*,[23] the Court analyzed a defendant's challenge to a bankruptcy trustee's alter ego/reverse piercing claims on the basis that such claims could not provide the foundation for claims to avoid a pre-petition transaction. In *American International Refinery* the Court reviewed Nevada alter ego cases and noted that in Nevada the "alter ego doctrine does not merely shift liability from one entity to another but expands the debtor's estate to include the property of the alter ego." *Id*. at 744. Citing *Western World Funding, Inc.*, 52 B.R. 743, 763 (Bankr. Nev. 1985), Bankruptcy Judge Summerhays recognized that a debtor "has, in some sense, an equitable interest in the assets of the alter ego."[24]

Here, if Plaintiff carries the burden of proving the alter ego claims then Plaintiff will have demonstrated that the subject fraudulent transfer and breach of contract claims were property of

---

[21] In re Wardle, 2006 WL 6811026 (B.A.P. 9th Cir. 2006).
[22] See *In re Sample*, 2:10-Bk-38373-DPC, July 15, 2013.
[23] 402 B.R. 728 (Bankr. W.D. La. 2008).
[24] *American International Refinery* at 745.

Debtor's estate and those claims now belong to the Plan Trust. Determining what is property of a bankruptcy estate and what claims exist against the estate are at the heart (or "core") of the bankruptcy court's authority and jurisdiction. Moreover, the Court need not try the alter ego claims prior to addressing the other Counts of Plaintiff's Complaint as these claims are all intertwined. Judicial economy and the parties' limited resources dictate resolution of these issues together and not in a piecemeal fashion.

### IV. CONCLUSION

The Court has not and now cannot find that Debtor and Northern Zinc have been substantially consolidated. However, Plaintiff's Complaint in Count II sets forth a plausible claim when seeking this Court's declaration that Northern Zinc's assets and liabilities were Debtor's assets and liabilities, that Northern Zinc was the alter ego of Debtor at all relevant times and that Northern Zinc and Debtor operated as a single business entity. If Plaintiff proves these claims then the assets of Northern Zinc were the assets of Debtor and now are assets of the Plan Trust. Likewise, Northern Zinc's debts (if any) were obligations of the Debtor and now have a right to pro rata distribution from the Plan Trust.

Finally, for the reasons stated in Plaintiff's briefing, the Defendants' Motion to Dismiss Plaintiff's claims against Titan Canada is denied.

Defendants' Motion to Dismiss is hereby denied. Defendants' demand that Plaintiff's alter ego/piercing claim be tried prior to trying the merits of Plaintiff's other causes of action is also hereby denied.

**DATED AND SIGNED ABOVE**.