SO ORDERED.

Dated: April 11, 2022

Daniel P. Collins, Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | ) Chapter 11 Proceedings |
| | ) |
| STAR MOUNTAIN RESOURCES, INC., | ) Case No: 2:18-bk-01594-DPC |
| | ) |
| | ) Adversary No.: 2:19-ap-00412-DPC |
| Debtor. | ) |
| | ) |
| JARED PARKER, in his capacity as Plan Trustee for the Star Mountain Plan Trust, | ) **UNDER ADVISEMENT ORDER** |
| | ) **REGARDING TITAN** |
| | ) **DEFENDANTS' DAMAGE** |
| | ) **CAPPING MOTION** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) (Not for Publication – electronic |
| TITAN MINING (US) CORPORATION, | ) Docketing ONLY)[1] |
| a Delaware corporation; TITAN | ) |
| MINING CORPORATION, a British | ) |
| Columbia, Canada corporation; | ) |
| NORTHERN ZINC, LLC, a Nevada | ) |
| limited liability company, JOHN AND | ) |
| JANE DOES 1-10; BLACK | ) |
| CORPORATIONS 1-10; WHITE | ) |
| PARTNERSHIPS 1-10; and GRAY | ) |
| TRUSTS 1-10, | ) |
| | ) |
| Defendants. | ) |

Before this Court is Defendant Titan Mining (US) Corporation's ("Titan US") and Defendant Titan Mining Corporation's ("Titan BC") (collectively "Defendants") Motion ("Capping Motion")[2] for Partial Summary Judgment Limiting Any Recoveries to the

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.
[2] Adv. DE 228. "Adv. DE" references a docket entry in this adversary proceeding ("Adversary Proceeding"): 2:19-ap-00412-DPC.

1  Amount Necessary to Satisfy Legitimate Creditor Claims under 11 U.S.C. § 550(a).[3]

2  Plaintiff, Plan Trustee, Jared Parker ("Plaintiff" or "Plan Trustee") filed a Response

3  ("Response")[4] to the Capping Motion and Defendants filed their Reply ("Reply").[5] The

4  Court heard oral argument ("Hearing") on the Capping Motion.[6]

5      Having heard the parties' arguments and having reviewed their briefs, this Court

6  now holds that Defendants' Capping Motion is denied because there are genuine issues

7  of material fact as to the amount of allowable claims against this bankruptcy estate.

8  However, the Court will resolve the parties' dispute regarding capping avoidance

9  recoveries under § 550(a) since doing so, in the Court's opinion, might aid the parties in

10  settlement discussions. The Court is compelled to follow binding Ninth Circuit precedent.

11  The Court holds that the Plan Trustee's recovery under § 550(a) is not capped at the

12  amount of allowed creditor claims.

13

14  **I.    BACKGROUND**

15      **A.    Debtor's Bankruptcy.**

16      On February 21, 2018, Star Mountain Resources, Inc. ("Debtor") filed its

17  voluntary chapter 11 bankruptcy petition.[7] On April 18, 2018, the United States Trustee

18  appointed the official committee of unsecured creditors ("Unsecured Creditors'

19  Committee").[8] On May 8, 2019, the Unsecured Creditors' Committee filed its Official

20  Committee of Unsecured Creditors' Amended Chapter 11 Plan of Liquidation ("Plan").[9]

21  The Court approved the Plan ("Confirmation Order") on July 5, 2019.[10] The

22
---
[3] Unless indicated otherwise, statutory citations refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-
23  1532.
[4] Adv. DE 235.
[5] Adv. DE 238.
24  [6] Adv. DE 256.
[7] DE 1. "DE" references a docket entry in this administrative bankruptcy case ("Administrative Case"): 2:18-bk-
01594-DPC.
25  [8] DE 42.
[9] DE 334.
26  [10] DE 355.

Confirmation Order created a liquidating trust ("Liquidating Trust"). The Plan Trustee was appointed trustee of the Liquidating Trust ("Liquidating Trustee") to "complete the liquidation process, including any and all litigation."[11]

The Plan provided for the transfer of all Debtor's assets to the Liquidating Trust on the effective date of the Plan.[12] As of October 27, 2021, the Liquidating Trust held assets in the aggregate amount of at least $3,110,182.11.[13] The Plan provides that, after all allowed creditor claims are satisfied, the Plan Trustee must distribute remaining assets to allowed equity interest holders ("Equity Holders").[14] Equity Holders from Classes 3-6 received beneficial interests in the Liquidating Trust, but the Plan also canceled all equity shares in the Debtor.[15]

**B.     Creditor Claims Against Debtor.**

The claims bar date in Debtor's chapter 11 case was set for July 9, 2018.[16] Aviano Financial Group, LLC ("Aviano") and SGS Acquisition, Ltd. ("SGS") filed the two largest claims against Debtor's bankruptcy estate. Aviano filed a proof of claim asserting an unsecured claim for $118,211,597 ("Aviano Claim").[17] SGS filed a proof of claim asserting an unsecured claim for $28,300,000 ("SGS Claim").[18] Debtor filed objections to the allowance of both the Aviano Claim and SGS Claim, neither of which have been resolved.[19] At the Hearing, the Plan Trustee confirmed he would actively pursue Debtor's

---

[11] DE 355.
[12] DE 334.
[13] Adv. DE 238 and Adv. DE 229. $3,110,182.11 is the amount of assets Defendants allege the Liquidating Trust holds. The Plan Trustee did not dispute this allegation. However, this amount is subject to change if the Plan Trustee is successful in this Adversary Proceeding. The Liquidating Trust's currents assets would be reduced by the $1 million note the Debtor received from the sale which the Liquidating Trustee now seeks to avoid. If the Liquidating Trustee's avoidance action is successful, he would also need to return the shares of Titan BC's stock, which Defendants transferred to the Debtor as consideration for the sale. Those shares at one point totaled $2,968,900.
[14] DE 334, page 13-14.
[15] DE 334, page 13-14.
[16] DE 59.
[17] Proof of Claim ("POC") 3-1.
[18] POC 2-1.
[19] DE 121 and DE 118.

objections against both of these claims.[20] Excluding the Aviano Claim and SGS Claim, the aggregate amount of unpaid creditor claims totals $2,707,681.26.[21]

Defendants allege that the potential universe of allowed creditor claims will amount to no more than $3,899,611.26 once the Aviano Claim and SGS Claim are finally allowed or disallowed.[22] This $3,899,611.26 sum is compromised of the undisputed, unpaid claims against the estate and $1,191,930 for the Aviano Claim.[23] Defendants argue that Aviano Claim cannot exceed $1,191,930 and that the SGS Claim must be denied in its entirety.[24]

### C. The Adversary Proceeding.

On November 19, 2019, Plaintiff initiated this Adversary Proceeding by filing a complaint against Defendants.[25] On May 8, 2020, Plaintiff filed a Second Amended Complaint ("Complaint").[26] Count I of the Complaint asserts an actual and constructive fraudulent transfer avoidance claim ("Fraudulent Transfer Claim") against Defendants under §§ 544, 548, and 550 and Nev. Rev. Stat. § 112.140.[27] The purported fraudulent transfer stems from a December 30, 2016 Purchase Agreement ("Purchase Agreement")[28] entered into between Titan US, Titan BC, Northern Zinc LLC ("Northern Zinc"), Debtor, Balmat Holding Corporation ("Balmat"), and St. Lawrence Zinc Company, LLC ("SLZ"). The Purchase Agreement involved Titan US's purchase of the issued and outstanding shares of Balmat ("Balmat Shares") from Northern Zinc.[29] Plaintiff's Complaint asserts that Debtor and Northern Zinc are not distinct entities but,

---

[20] Adv. DE 256. The Court sees on the docket no evidence of any 2022 developments in this regard.
[21] Adv. DE 238. Comprised of (i) unpaid unsecured claims totaling $2,507.681.26 and (ii) unpaid administrative claims totaling $200,000.
[22] Adv. DE 228.
[23] Adv. DE 228
[24] Adv. DE 228
[25] Adv. DE 1.
[26] Adv. DE 60.
[27] Adv. DE 60.
[28] Adv. DE 64, Exhibit A.
[29] Adv. DE 64, Exhibit A.

rather, are one-and-the-same and that certain directors and officers of the Debtor orchestrated the fraudulent transfer.[30] Defendants believe the Plan Trustee seeks to recover $70 - $100 million on the Fraudulent Transfer Claim.[31]

### D. Summary of the Parties' Positions.

#### i. Defendants' Capping Motion

Defendants seek to cap the Plan Trustee's potential recovery on the Fraudulent Transfer Claim under § 550(a) at $900,000, which Defendants argue is an amount more than sufficient to fully pay all potentially legitimate creditor claims according to the Plan.[32] Defendants read § 550(a)'s phrase "for the benefit of the estate" as limiting the Plan Trustee's ability to recover from an avoided transfer no more than the amounts required to satisfy allowed creditor claims.[33] Put another way, Defendants contend avoidance recoveries under § 550(a) cannot benefit Equity Holders.[34]

#### ii. Plaintiff's Position

The Plan Trustee's Response disputes the Defendants' characterization of § 550(a). The Plan Trustee argues that § 550(a)'s "for the benefit of the estate" language sets no limit on the amount of recovery but requires only that an avoidance recovery provide, at a minimum, some benefit to Debtor's creditors.[35] Essentially, the Plan Trustee contends that § 550(a) only prevents Equity Holders from being the sole beneficiaries of

---

[30] Adv. DE 60.

[31] Adv. DE 256. The exact amount of damages the Plan Trustee seeks to recover on the Fraudulent Transfer Claim is unknown. At the Hearing, Defendants stated that the Plan Trustee had made a demand for around $70-$100 million.

[32] Adv. DE 228, page 3. This amount is calculated by taking the value of the assets in the Liquidating Trust ($3,110,182.11), less what Defendants' claim to be the potential universe of allowed claims ($3,899,611.26), plus an additional cash cushion ($110,570.85). This calculation, of course, ignores the Plaintiff's contention that, if the transfer is avoided, the note and stock received by the Debtor will need to be returned to the transferor of such note and stock.

[33] Adv. DE 228, page 8.

[34] Adv. DE 228, page 2-3.

[35] Adv. DE 235, page 5.

the recoveries on the Plan Trustee's avoidance actions.[36] The Plan Trustee argues that, if he succeeds on the Fraudulent Transfer Claim, he may recover the value of the avoided transaction in its entirety.[37]

### iii. Supplemental Briefing on § 726(a)

At the Hearing, the Plan Trustee argued that his interpretation of § 550(a)'s meaning is supported by other sections of the Code, specifically § 726 ("§ 726 Argument").[38] Because the Plan Trustee did not raise the § 726 Argument in his initial Response, Defendants sought to file supplemental briefing on the § 726 Argument.[39] The Court also inquired whether § 541, which describes property of the estate, had any bearing on the meaning of § 550(a).[40]

The crux of the Plan Trustee's supplemental argument is that "for the benefit of the estate" under § 550(a) cannot be read to limit excess recoveries because § 726(a)(6) contemplates the distribution of a surplus estate to equity.[41] The Plan Trustee's reasoning can be broken down into three parts. First, § 550(a) refers to the principle that there must be at least one creditor before a fraudulent transfer action may be brought ("Gating Requirement").[42] Second, once the Gating Requirement is satisfied, and assuming the transfer is avoided, § 541(a)(4) provides that the transferred property becomes property of the estate.[43] Finally, the Plan Trustee must distribute the estate property in accordance with the priorities under § 726(a).[44]

Defendants argue that the Plan Trustee's § 726 Argument is unsupported by the actual language of the Code or caselaw.[45] Defendants also argue that the Plan Trustee's

---

[36] Adv. DE 235, page 5.
[37] Adv. DE 235, page 6-7.
[38] Adv. DE 256.
[39] Adv. DE 256.
[40] Adv. DE 256.
[41] Adv. DE 261.
[42] Adv. DE 261, page 4-5.
[43] Adv. DE 261, page 5.
[44] Adv. DE 261, page 6.
[45] Adv. DE 254, page 3.

1  § 726 Argument is directly refuted by § 541(a)(3), which provides that only property

2  recovered under § 550(a) becomes property of the estate.[46]

3

4  **II.    JURISDICTION**

5       This Court has jurisdiction over this bankruptcy case and this Adversary

6  Proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(H).

7

8  **III.   ISSUE**

9       The issue before the Court is, in the case of a confirmed chapter 11 liquidating

10  plan, whether the Liquidating Trustee's fraudulent transfer avoidance recovery under

11  § 550(a) may exceed the total amount of allowed creditor claims, thus enabling Equity

12  Holders to receive that surplus.

13

14  **IV.    ANALYSIS**

15       **A.    Motion for Summary Judgment.**

16       Bankruptcy Rule 7056 applies Rule 56 of the Federal Rules of Civil Procedure in

17  adversary proceedings. Under Rule 56, summary judgment is appropriate only if "the

18  movant shows that there is no genuine issue as to any material fact and the movant is

19  entitled to judgment as a matter of law."[47] At the summary judgment stage, the court does

20  not weigh the evidence or determine the truth of the matter but determines whether there

21  is a genuine issue for trial.[48] The moving party bears the initial burden of proving an

22  absence of a genuine issue of material fact.[49] Courts have held that the use of partial

23  summary judgment to determine the amount of recovery under § 550(a) is appropriate.[50]

---

[46] Adv. DE 254, page 4-5.
[47] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[48] *In re Marciano*, 459 B.R. 27, 52 (9th Cir. B.A.P. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[49] *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).
[50] *See In re DSI Renal Holdings, LLC*, 2020 WL 550987, at *6 (Bankr. D. Del. Feb. 4, 2020) (holding the capping motion at issue was not an inappropriate advisory opinion).

Defendants have failed to demonstrate that there is no genuine issue of material fact. The exact amount of allowed creditor claims against Debtor's estate is unknown and cannot be determined at this time.[51] The Plan Trustee is supposedly pursuing the Debtor's objections to the allowance of the Aviano Claim and SGS Claim. The Court must deny the Capping Motion for this reason and because Defendants' request is contrary to Ninth Circuit law.

### B. Capping Avoidance Recoveries Under § 550(a).

The purpose of avoiding fraudulent transfers is to "preserve assets of the bankruptcy estate *for the benefit of creditors*, . . . and prohibit 'the transfer of a debtor's property with either the intent or effect of placing the property beyond the reach of its creditors'"[52] (emphasis added).

The Code provides that the avoidance of a fraudulent transfer and recovery on account of such avoided transfer are two distinctly separate concepts.[53] First, the trustee or estate representative must demonstrate the right to avoid a transfer under §§ 544 and/or 548.[54] Once the trustee demonstrates the right to avoid the transfer, the trustee must then establish the *amount* of recovery under § 550(a).[55] A trustee's right to avoid a fraudulent transfer does not necessarily mean the trustee may actually recover the entire value of that transfer under § 550(a).[56] For the purpose of this analysis, the Court will assume, *but not decide*, that the Plan Trustee will succeed on his Fraudulent Transfer Claim.

Section 550(a) provides that:

to the extent that a transfer is avoided under section 544, . . . [or] 548 . . ., the trustee may recover, *for the benefit of the estate*, the property transferred, or, if the court so orders, the value of such property (emphasis added).

---

[51] Adv. DE 256.
[52] *In re Feiler*, 230 B.R. 164, 169 (9th Cir. B.A.P 1999).
[53] *In re Acequia*, 34 F.3d 800, 809 (9th Cir. 1994).
[54] *Id.*
[55] *Id.*
[56] *Id.* at 811; *In re JTS Corp.*, 617 F.3d 1102, 1113 (9th Cir. 2010) (holding section 550(a) governs the extent of recovery).

The meaning of the phrase "for the benefit of the estate" is not defined in the Code or discussed in the legislative history. Courts across the country have wrestled with the meaning of this phrase. There are two viewpoints.[57] A few courts take a "narrow view" of § 550(a), interpreting "benefit of the estate" to mean a direct benefit to creditors.[58] However, the majority of courts, including the Ninth Circuit, take a "broad" view of § 550(a). Under the "broad view," there is a "benefit to the estate" when creditors are either directly or indirectly benefited by the trustee's avoidance action.[59]

Despite these differing views, the caselaw is clear that recovery under § 550(a) must provide some benefit to creditors. A trustee or debtor-in-possession may not recover the property transferred or its value *solely* for a debtor's (*i.e.,* equity) benefit.[60]

Here, there is no dispute that creditors stand to significantly benefit if the Plan Trustee is successful on his Fraudulent Transfer Claim. The Plan Trustee's recovery under § 550(a) may make it possible to pay all allowed creditor claims in full under the Plan. The heart of the parties' dispute is whether the Plan Trustee can recover excess funds under § 550(a) for the benefit of Debtor's pre-petition Equity Holders.

---

[57] *See* Ashley D. Champion, *Navigating the Upside Down*: *Whether § 550 Provides the Ceiling or Floor to Recovery in Fraudulent Transfer Litigation*, 28 No. 4 J. BANKR. L. & PRAC. NL. ART. 5 (2019) (providing an overview and more in-depth discussion of the two viewpoints, often referred to as the ceiling and floor approach).

[58] *See In re DSI Renal Holdings, LLC*, 2020 WL 1527355, at *6 (holding "for the benefit of the estate" means "for the benefit of creditors"); *see also In re Harstad*, 155 B.R. 500, 511-12 (Bankr. D. Minn. 1993) (dismissing the preference action where payment to creditors would be unaffected by any recovery).

[59] *See In re Acequia*, 34 F.3d at 811(holding courts construe the "benefit to the estate" requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by the plan of reorganization and in no way varies with recovery of avoidable transfers); *see also In re Trans World Airlines, Inc.*, 163 B.R. 964, 973 (Bankr. D. Del. 1994) (holding that unsecured creditors would benefit from the enhanced value of the reorganized debtor by reason of their shareholder interest); *In re Centennial Industries, Inc.*, 12 B.R. 99,102-103 (Bankr. S.D.N.Y 1981) (reasoning that recovery would benefit the estate even where payments to unsecured creditors were fixed because it would increase the likelihood of creditors receiving their future payments).

[60] *See In re Acequia*, 34 F.3d at 811, citing with approval *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir. 1991) (holding "a debtor-in-possession of a bankruptcy estate cannot maintain an avoidance action . . . unless the estate would be benefited by the recovery of the transferred property"); *see also In re New Life Adult Medical Care Center, Inc.*, 2014 WL 6851258, at *6 (Bankr. D. N. J. Dec. 3, 2014) (granting summary judgment in favor of transferee where only equity stood to benefit from any recovery because the chapter 11 liquidating plan provided for full repayment of all creditor claims); *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 92-97 (S.D.N.Y. 2008) (finding that an avoidance action could not be maintained in a circumstance where creditors did not stand to receive any benefit from the recovery).

i. *Moore v. Bay's Application to § 550(a)*

Some courts hold that § 550(a)'s phrase "for the benefit of the estate" codifies the Supreme Court's 1931 decision in *Moore v. Bay.*[61] In *Moore,* the Supreme Court considered whether a trustee's recovery on a fraudulent transfer claim under the 1898 Bankruptcy Act[62] was limited to the rights of unsecured creditors with a valid state law claim (*i.e.*, "the triggering creditor").[63]

In *Moore*, the debtor granted a creditor a lien on his personal property that was determined to be invalid under state law and therefore avoidable under the 1898 Bankruptcy Act.[64] The sole issue before the Court was whether the lien was avoidable as to creditors who had extended credit after the lien was recorded.[65] The Court held that the trustee could avoid the lien on the debtor's property for the "benefit of the estate . . . distributed in 'dividends of an equal per centum on all allowed claims . . ..'"[66] In essence, the Court held that even creditors who could not have brought the fraudulent transfer action on their own behalf under state law could benefit from the trustee's avoidance action.[67]

Courts and litigants across the country, including the Ninth Circuit, have relied on *Moore* for the proposition that a trustee may recover the value of the transfer in its entirety for the benefit of all creditors.[68] However, the application of *Moore* to avoidance

---

[61] *See Congress Credit Corp. v. AJC Intern*, 186 B.R. 555, 558 (D.P.R. 1995); *see also In re DLC, Ltd.*, 295 B.R. 593, 606 (8th Cir. B.A.P. 2003).

[62] § 70e of the 1898 Bankruptcy Act was the precursor to § 544 of the Code.

[63] *Moore v. Bay*, 284 U.S. 4 (1931).

[64] *Id.*

[65] *Id.*

[66] *See id.*

[67] *Id.*

[68] *See In re JTS Corp.*, 617 F.3d at 1112-13 (holding that the Supreme Court in *Moore* and the Ninth Circuit have interpreted claims under § 544 and § 550 to require that "once avoidance is shown, the trustee's recovery cannot be limited in certain situations"); *In re Tronox*, 464 B.R. 606, 616 (Bankr. S.D.N.Y. 2012) (holding that "[b]ecause a trustee's recovery under § 544(b) is governed by § 550, it follows that Congress intended to incorporate *Moore's* rule of complete avoidance into § 550); *In re Parjaro Dunes Rental Agency Inc.*, 174 B.R. 577, 596 (Bankr. N.D. Cal. 1994) (holding *Moore* stands for the proposition that "improper transfers may be avoided in their entirety, regardless of the relationship between the size of the transfer and the amount of unsecured claims").

recoveries under § 550(a) is not without criticism.[69] Interestingly, the 1973 Report from the Commission on the Bankruptcy Laws of the United States ("Commission") recommended

> that *Moore v. Bay* be overruled; this is done by the addition of the phrase 'to the extent of such allowable claim or claims for the benefit of such creditor or creditors' . . . . Consistent with the overruling of *Moore v. Bay*, any judgment recovered by the trustee on such claim should benefit only the creditors on whose behalf such claims were asserted in the suit.[70]

The Commission's recommendation was derived from §70e(1) and (2) of the 1898 Bankruptcy Act but overruled *Moore*, "which allowed the trustee to avoid a transfer or obligation entirely without regard to the size of the claims of the creditors whose rights and powers the trustee was asserting . . . ."[71] But, alas, Congress did not adopt the Commission's recommendation. *Moore's* application is supported by the Ninth Circuit's holding in *In re Acequia*.[72]

ii.  Ninth Circuit: *In re Acequia*

*In re Acequia* is the Ninth Circuit's seminal case addressing a trustee's recovery on a fraudulent transfer claim under § 550(a).[73] In *Acequia*, the defendant, debtor's former controlling shareholder, fraudulently transferred the debtor's assets to himself.[74] At the time of bankruptcy, defendant and his ex-wife each held a 50% ownership interest

---

[69] *See In re DSI Renal Holdings LLC*, 2020 WL 550987, at *9 (holding the Supreme Court's decision in *Moore* was not relevant to the issue of whether the trustee's avoidance recoveries under § 550(a) may be limited); *see also* Robert B. Bruner, *The Unexplored Limits of Moore v. Bay: Statutory and Equitable Basis for Limiting Money Damage Awards on Fraudulent Transfer Claims*, 26 No. 3. J. BANKR. L. & PRAC. NL ART. 2 (2017) (discussing why *Moore v. Bay's* application should be limited to allow bankruptcy courts judicial discretion to limit fraudulent transfer money judgments); Emily A. Klienhaus, *Let's Rethink Moore v. Bay*, ABI Journal (Sept. 2015) (noting that *Moore v. Bay's* application may lead to "extraordinary results").

[70] EXECUTIVE DIRECTOR, COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, 93D CONG, REP. OF THE COMMISSION ON THE BANKRUPTCY LAWS PART I (Comm. Print 1973).

[71] EXECUTIVE DIRECTOR, COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, 93D CONG, REP. OF THE COMMISSION ON THE BANKRUPTCY LAWS PART II (Comm. Print 1973).

[72] *See* Robert L. Haig & Alexander Lees, *§ 152:31. Remedies in bankruptcy—"For the benefit of the estate,"* 14 BUS. & COM. LITIG. FED. CTS. § 152.31 5TH ED. (Dec. 2021) (noting *In re Acequia* interprets *Moore* expansively, meaning the entire transfer may be recovered even if creditors have been paid in full).

[73] *In re Acequia*, 34 F.3d at 800.

[74] *Id.* at 803.

in the debtor pursuant to their martial settlement agreement.[75] The debtor's chapter 11 plan of reorganization provided for the full repayment of all creditor claims.[76]

In a post-confirmation fraudulent transfer action filed with the bankruptcy court and then removed to the District Court of Idaho, Magistrate Judge Mikel Williams[77] held that the defendant transferred the debtor's assets with actual fraudulent intent.[78] The Magistrate Judge found that at the time of the fraudulent transfer, the defendant maintained complete control over the debtor's finances and had no documentation explaining the transfers to himself.[79]

In *Acequia* the Magistrate Judge also held that debtor's standing under § 544(b) to recover "for the benefit of the estate" was capped at the total amount of unsecured creditor claims since the unsecured creditors were paid in full under the debtor's plan of reorganization.[80] Although the trial court did not expressly consider § 550(a), the court held that "[t]o allow Acequia to recover *more* than it paid out to unsecured creditors would necessarily benefit the debtor . . . to the extent of several million dollars over the amount of unsecured claims that were paid."[81]

On appeal, the Ninth Circuit held that the "[M]agistrate [J]udge erred by limiting [debtor's] recovery of the fraudulent transfers to the amount of unsecured claims against the bankruptcy estate."[82] In reaching its decision, the Circuit explicitly recognized the separate concepts of avoiding a transfer and recovery from a transferee.[83] The Ninth Circuit held that that "[w]hile [a] transfer or obligation must be voidable as against a creditor holding an allowable claim, *the measure and distribution of recovery is not*

---

[75] *Id.* at 803.
[76] *Id.* at 807.
[77] The parties in *Acequia* consented to the Magistrate Judge's entry of final orders in that District Court action.
[78] *Id.* at 804-805.
[79] *Id.* at 806.
[80] *In re Acequia*, 34 F.3d at 810.
[81] *Id.* at 811.
[82] *Id.* at 809.
[83] *See id.* at 809.

*limited by the creditor's right.*[84] To illustrate this point, the Circuit provided a scenario of a debtor who makes four separate transfers for $10 each before bankruptcy. The Circuit emphasized that, once in bankruptcy, the trustee could avoid any of the four transfers, totaling $40, even if there existed only one unsecured creditor with a claim for $5.[85]

In *Acequia*, the Ninth Circuit explicitly disagreed with the defendant's contention that the law "does not justify invoking section 544(b) once a trustee recovers transfers in an amount sufficient to satisfy unsecured claims."[86] The Circuit reasoned that if the defendant were correct, a party could escape fraudulent transfer liability "merely by making several small transfers instead of one large transfer."[87]

The Ninth Circuit also disagreed with the Magistrate Judge's implicit determination that recovery over the amount of unsecured creditor claims would only benefit the debtor and not the estate.[88] Citing *Collier* with approval, the court noted that "in general, the trustee . . . may not recover the property transferred or its value when the result is to benefit *only* the debtor rather than the estate" (emphasis added).[89] However, adopting the "broad view" of § 550(a), the Ninth Circuit found that the debtor's surplus recovery would "benefit the estate" by (1) aiding the debtor's post-confirmation repayment obligations under the plan of reorganization, including payments under a long-term note, and (2) reimbursing the bankruptcy estate for the costs of pursuing the avoidance action.[90]

Unlike the Magistrate Judge, the Ninth Circuit was not concerned with a surplus recovery providing the debtor a "windfall."[91] The Circuit reasoned that the debtor had a "greater equitable claim to the transferred funds," given the fact that the defendant—the

---

[84] *Id.* at 809, citing with approval 4 *Collier on Bankruptcy* ¶ 544.03[1] at 544-17 (15th ed. 1994).
[85] *Id.* at 809.
[86] *In re Acequia*, 34 F.3d at 810.
[87] *Id.*
[88] *Id.* at 811.
[89] *Id,* citing *Collier on Bankruptcy* ¶ 550.02 at 550-6 to 550-7 (15th ed. 1994).
[90] *Id.* at 811-12.
[91] *Id.* at 811-12.

sole perpetrator of the fraudulent transfer—acted with actual fraudulent intent in transferring the debtor's assets to himself on the precipice of bankruptcy.[92] The Ninth Circuit reasoned that allowing the debtor to recover the entire value of the fraudulent transfer would "merely make the bankruptcy estate whole."[93]

In *Acequia*, the Ninth Circuit did not explicitly define § 550's phrase "for the benefit of the estate." However, by emphasizing that the purpose of recovery is to make the "estate whole," the court effectively held that the "estate" is not limited solely to creditors' interests in estate property, but includes equity holders' interests in estate property.[94] In essence, the Ninth Circuit was not concerned with whether a surplus recovery benefited equity holders so long as the estate was restored to the condition it would have been had the transfer never occurred.

In the case at bar, Defendants correctly note that the Ninth Circuit in *Acequia* was presented with very different facts than this Court. The debtor in *Acequia* reorganized and continued operations post-confirmation.[95] Here, the Debtor is liquidating. In *Acequia*, the debtor's excess avoidance action recovery provided a continued benefit to creditors by bolstering the debtor's post-confirmation repayment obligations, improving the likelihood of a successful reorganization.[96] Here, any surplus recovery over the amount needed to satisfy creditor claims will benefit Equity Holders, and those Equity Holders were not issued new stock under the Plan. In fact, their pre-petition stock was cancelled and only their interests in the Liquidating Trust remains.

Despite these differences, this Court cannot ignore the Ninth Circuit's plain, if not, sweeping pronouncement that the entire avoided transfer or its value may be recovered

---

[92] *In re Acequia*, 34 F.3d at 812.
[93] *Id.*
[94] *See id; see also In re DLC, Ltd.*, 295 B.R. at 607 (holding "the 'estate' is not synonymous with the concept of a pool of assets to be gathered for the sole benefit of unsecured creditors").
[95] *Id.* at 803.
[96] *Id.* at 812.

under § 550(a) even if allowed creditor claims are paid in full.[97] Since the Ninth Circuit's decision in 1994, lower courts often cite *Acequia* for the proposition that § 550(a)'s phrase "for the benefit of the estate" does not cap recovery but sets a minimum floor—some "benefit to the estate"—which the Ninth Circuit interprets broadly.[98]

### iii.   Survey of Cases Outside the Ninth Circuit

The Plan Trustee cites numerous cases outside of the Ninth Circuit where courts have also refused to cap the amount of recovery under § 550(a).

In *In re Tronox*, the Southern District of New York Bankruptcy Court considered whether § 550's "for the benefit of the estate" clause limited the debtor's recovery at the amount of unpaid creditor claims.[99] Prior to bankruptcy, the debtor's predecessor transferred valuable oil and gas assets to the defendant through a multi-staged transaction.[100] The purpose of the transaction was to shield the debtor's assets from environmental and tort liabilities.[101] The transfer left the chapter 11 debtor undercapitalized and saddled with legacy liabilities.[102] In consideration for plan support, the debtor settled with certain environmental and tort creditors who agreed to receive the proceeds, if any, from the fraudulent transfer avoidance action in return for satisfaction of their claims.[103] The settlement, in turn, made it possible for the debtor to provide general unsecured creditors an equity stake in the reorganized debtor, free of the legacy liabilities.[104] The debtor listed the value of the environmental and tort creditors' claims at anywhere between $1.9 - $6.2 billion in debtor's disclosure statement.[105] The debtor

---

[97] *Id.* at 803.
[98] *See In re CVAH, Inc.*, 570 B.R. 816, 840 (Bankr. D. Idaho 2017) (finding *Acequia* held "it was improper to limit a trustee's recovery under § 544(b)(1) & § 550 to the amount of unsecured claims in the bankruptcy case"); *see also In re Burn*, 360 B.R. 669, 672 (Bankr. C.D. Cal. 2007) (citing *Acequia* for the proposition that the trustee's recovery should not be limited by the amount of the creditor's claim).
[99] *In re Tronox*, 464 B.R. 606, 611 (Bankr. S.D.N.Y. 2012).
[100] *Id.* at 609.
[101] *Id.*
[102] *Id.*
[103] *Id.* at 610.
[104] *Id.* at 610.
[105] *In re Tronox Inc.*, 464 B.R at 611.

sought to recovery approximately $15.5 billion in the fraudulent transfer adversary proceeding.[106]

The defendant argued that § 550(a)'s phrase "for the benefit of the estate" capped the debtor's recovery at the amount of unsecured claims.[107] The debtor argued that the plain language of § 550 and relevant case law imposed no limit on its potential recovery.[108]

Relying on the Ninth Circuit's decision in *Acequia*, the court held that "once an avoidance action creates some benefit for creditors . . ." § 550(a)'s language "for the benefit of the estate" does not cap the debtor's recovery.[109]

The court reasoned that its holding was supported by the Code, the policy behind § 550(a) and the trustee's avoidance powers. First, the court found that § 541, which defines the "estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," supported the court's conclusion that the "estate" was not limited to only the interests of creditors.[110] Next, the court proposed that Congress could have written § 550(a) to explicitly state that the trustee could recover an avoided transfer only "*to the extent of* benefit to the estate," if Congress had intended the phrase to limit recovery on an avoidance action.[111]

Third, the *Tronox* court reasoned that § 550's plain language and underlying policy of "restoring the estate to its position prior to the transfer" supported not capping the debtor's recovery under § 550(a).[112] Finally, the *Tronox* court discussed the differences between state fraudulent transfer laws and a bankruptcy estate representative's avoidance powers. While state fraudulent transfer laws provide that "a

---

[106] *Id.*
[107] *Id.* at 609.
[108] *Id.*
[109] *Id.* at 614, citing *In re Acequia*, 34 F.3d at 811.
[110] *In re Tronox Inc.*, 464 B.R at 614.
[111] *Id.*
[112] *Id.*

creditor in a fraudulent transfer action may not recover more than 'the amount necessary to satisfy the creditor's claim,'" the court highlighted that no such limit applies in bankruptcy.[113] An action "pursued by a bankruptcy estate representative [is] on behalf of the 'estate.'"[114] The court concluded that § 550's "for the benefit of the estate" requirement was satisfied through the settlement with the environmental and tort creditors, which directed all recovered proceeds in the adversary proceeding to creditors and provided general unsecured creditors an equity interest in the reorganized debtor.[115]

In *In re Trans World Airlines* ("*TWA*")[116] and *MC Asset Recovery, LLC*, v. *Southern Co.* ("*MC Asset*"),[117] the courts refused to cap damages under § 550(a) even though all creditor claims were paid in full. Those courts reasoned that the excess avoidance recoveries would "benefit the estate" because unsecured creditors had received stock in the reorganized debtor on behalf of their allowed claims.[118]

iv.  This Court's Discomfort in Applying *Acequia's* Mandate to This Case

A common theme binds the *Tronox*, *TWA*, and *MC Asset* cases, making them distinguishable from the case before this Court. In all three cases, the debtors were undergoing a reorganization. The debtors' plans of reorganization also provided creditors with an equity stake in the reorganized entity on account of their claims. Here, the Debtor is liquidating, and the Plan does not provide creditors with any equity stake in the Debtor. The *Tronox*, *TWA*, and *MC Asset* courts did not confront the issue of whether a *liquidated* debtor's pre-petition equity holders were entitled to a surplus recovery under § 550(a).

These distinguishing features give the Court reason to pause, especially because this Court finds Judge Owens' recent decision in *In re DSI Renal Holdings*, *LLC* ("*DSI*

---

[113] *Id.* at 615-16.
[114] *Id.*
[115] *Id.* at 617 (holding there "is no cap on, ... recovery other than the value of the property fraudulently transferred").
[116] *In re Trans World Airlines*, *Inc.*, 163 B.R. at 974.
[117] *MC Asset Recovery, LLC v. Southern Co.*, 2006 WL 5112612, at *7.
[118] *Id.*; *In re Trans World Airlines*, *Inc.*, 163 B.R at 969.

*Renal Holdings"*)[119] involving a liquidated debtor to be the most factually analogous case to the case at bar. The issue before Judge Owens was whether a chapter 7 trustee could recover more than the amount of the allowed claims asserted against the debtors' estate, enabling the debtors' equity holders to benefit from the excess recovery.[120]

The trustee's fraudulent transfer action in *DSI Renal Holdings* stemmed from a complex pre-petition restructuring agreement effectuated by certain defendants, including the debtors' directors and officers.[121] As a result of the complex transaction, the debtors were stripped of their valuable assets, namely a renal business, for little to no consideration.[122] A little over a year later, the assets were sold to a non-defendant third party for $689 million.[123] The trustee sought $678 million in damages on account of the estate's fraudulent transfer avoidance action.[124] The debtors' claim register showed only approximately $166 million in creditor claims.[125] The court noted that if the trustee were to recover $678 million, all creditor claims would be paid in full and there would be a substantial surplus distribution to the debtors' equity holders.[126]

The defendants in *DSI Renal Holdings* argued that § 550(a) prevented the trustee from recovering more than the amount necessary to pay all allowed creditor claims.[127] The trustee, relying on *Tronox*, argued § 550(a) did not limit his recovery but only "require[d] . . . that avoidance proceeds provide, at minimum, some benefit to creditors."[128] The trustee further relied on the Supreme Court's decision in *Moore* to support his argument that the challenged transfer should be "avoided in its entirety . . . to

---

[119] *In re DSI Renal Holdings, LLC*, 2020 WL 550987, at *1.
[120] *Id.* at *4.
[121] *Id.* at *3.
[122] *Id.* at *3.
[123] *Id.* at *4.
[124] *Id.* at *4.
[125] *In re DSI Renal Holdings*, 2020 WL 550987, at *4.
[126] *Id.*
[127] *Id.* at *4.
[128] *Id.*

restore the [d]ebtors' estates to their prior position regardless of the quantum of creditor claims."[129]

Relying on Third Circuit precedent, Judge Owens held that the trustee's recovery under § 550(a) was limited to the "total amount necessary to satisfy all allowed creditor claims and expenses in the [d]ebtors' bankruptcy case as provided for under section 726(a)(1)-(5)," including the allowed compensation of the trustee and his professionals.[130] Judge Owens reasoned that receipt of a more substantial recovery would be impermissible because it "provide[d] no accompanying benefit to creditors," given that the creditors would be fully paid.[131] The court further held that such excess recovery would "give rights and value to the [d]ebtors to which they were not entitled outside, nor were given inside, bankruptcy."[132]

Judge Owens supported her holding by distinguishing the courts' decisions in *Tronox* and *TWA*. First, Judge Owens noted that the *Tronox* and *TWA* courts were tasked with a different question—"whether creditors may receive *more than* their allowed claims from avoidance recoveries."[133] Judge Owens reasoned that, unlike the creditors in *Tronox* and *TWA*, who received an equity stake in the reorganized debtor, recoveries above the amount of creditor claims in the debtors' chapter 7 case provided no accompanying benefit to creditors once paid in full.[134]

Finally, Judge Owens debunked the chapter 7 trustee's reliance on *Moore*. Judge Owens clarified that the Supreme Court's decision in *Moore* addressed whether "avoidance and recovery under section 544 is for the benefit of all creditors . . . and . . . not limited to the amount of the triggering creditors' claims."[135] Judge Owens notably

---

[129] *Id.*
[130] *Id.* at *9.
[131] *In re DSI Renal Holdings*, 2020 WL 550987, at *7.
[132] *Id.*
[133] *Id.* at *8.
[134] *Id.* at *8.
[135] *In re DSI Renal Holdings*, 2020 WL 550987, at *9.

concluded that the Court's decision in *Moore* was irrelevant to the decision of whether to cap avoidance recoveries to the extent such recoveries only benefited debtor's pre-petition equity holders, like in the debtors' case.[136]

Like *DSI Renal Holdings*, the Plan Trustee here seeks to recover anywhere from $70 - $100 million on his Fraudulent Transfer Claim, while Defendants allege the potential universe of creditor claims totals no more than approximately $3.8 million.[137] Although the Court is not determining the allowed amount of creditor claims, taking Defendants' $3.8 million estimate as true would mean Equity Holders could realize approximately $66 million[138] from the Plan Trustee's avoidance action.

Given the liquidating nature of Debtor's case and the specific facts presented in the case at bar, the Court finds Judge Owens' reasoning in *DSI Renal Holdings* germane to this Adversary Proceeding. Although the debtor in *DSI Renal Holdings* was in a chapter 7 liquidation, this difference is immaterial.[139] Judge Owens' sound reasoning equally applies to a chapter 11 liquidation. However, it should be noted that Judge Owens' ruling was largely the inescapable product of binding Third Circuit precedent.[140] The Third Circuit interprets § 550(a)'s phrase "for the benefit of the estate" to mean "for the benefit of creditors," prohibiting debtors from benefiting from the trustee's avoidance powers.[141]

In this Court's view, allowing Debtor's Equity Holders—some of whom orchestrated the allegedly fraudulent transfer—to recover a surplus to the tune of millions of dollars would produce an absurd result. For example, under *Acequia's* reasoning, a

---

[136] *Id.*
[137] Adv. DE 228 and Adv. DE 256.
[138] The Court reaches this number by subtracting the alleged potential universe of allowed creditor claims ($3.8 million) from the minimum recovery value the Plan Trustee seeks ($70 million).
[139] *See In re DSI Renal Holdings*, 2020 WL 550987, at *6.
[140] *Id.* at *6.
[141] *See Id,* citing *In re Majestic Star Casino LLC*, 716 F. 3d 736, 761 (3d. Cir. 2013) (concluding that "[a] debtor is not entitled to benefit from any avoidance"); *In re Messina*, 687 F.3d 74, 82(3d Cir. 2002) (holding "for the debtors to obtain equity, they must have avoidance powers themselves or the ability to benefit from those of the trustee"); *In re Cybergenics Corp.*, 226 F.3d 237, 243-47 (3d Cir. 2000) (holding the debtor cannot invoke avoidance powers).

$1,000 allowed unsecured claim would open the door to a trustee filing a fraudulent transfer avoidance adversary proceeding, and despite the *de minimis* claim amount, the trustee could be in line to recover tens of millions of dollars for the benefit of the debtor's pre-petition equity holders. But for the $1,000 unsecured claim, the equity holders themselves could not have pursed that fraudulent transfer action or benefited from the recovery. While the Court recognizes that many of Debtor's Equity Holders were not involved in the alleged fraudulent transfer, their remedy should not be found in the Plan Trustee's avoidance powers under §§ 544 and 548 or the recovery on the avoided transfer under § 550(a). Innocent equity holders have rights outside of bankruptcy, which could remedy any damages they sustained by virtue of the fraudulent transfer orchestrated by the Debtor's directors and officers.[142]

The Court further questions the fact that the Plan Trustee's substantial recovery will benefit not only Equity Holders but the Plan Trustee's counsel, whose 45% contingency fee arrangement undoubtedly plays a role in the demand for recovery to Equity Holders. In this Court's view such outcome does not support the underlying purpose of fraudulent transfer laws. Fraudulent transfer laws were designed to allow a creditor to avoid an improper transaction by a debtor who unfairly reduced its assets to the detriment of its creditors.[143] The Plan Trustee's fraudulent transfer avoidance powers are, at bottom, creditor remedies. Moreover, in this Court's view, the fundamental purpose of recovery under § 550(a) should be to enlarge the estate *for the benefit of creditors*.[144]

---

[142] Shareholders, in general, have many legal remedies outside of bankruptcy to hold directors and officers accountable, including actions for corporate waste, breach of fiduciary duty, and shareholder derivative lawsuits, none of which were brought here.
[143] *In re JTS Corp.*, 617 F.3d at 1111.
[144] *In re Feiler*, 230 B.R. at 169; *Kipperman v. Onex Corp.*, 411 B.R. 805, 876 (N.D. Ga. 2009).

## C. The § 726 Argument.

Lastly, to address all the parties' arguments, the Court must say it is not persuaded by the Plan Trustee's § 726 Argument. Although § 726(a)(6) provides for the distribution of a surplus estate to the debtor or, in this case, Equity Holders, § 726 does not have any direct bearing on whether recovery under § 550(a) is "for the benefit of the estate."

The Plan Trustee's argument that, if the transfer is avoided, the fraudulently transferred property or its value comes back into the estate under § 541(a)(4) does not apply to the case at bar. Section 541(a)(4) applies to property that is either preserved for the estate's benefit or ordered transferred to the estate under §§ 510(c) or 551, neither of which apply here. Section 510(c) involves the equitable subordination of claims, while § 551 prevents junior lienholders from improving their position at the expense of the estate when a trustee avoids a senior lien.[145]

If § 541(a)(4) did apply to the facts at hand, the Plan Trustee's interpretation of § 541(a)(4) would render § 541(a)(3) meaningless.[146] Section 541(a)(3) expressly provides that only property recovered by the trustee pursuant to an avoidance action becomes property of the estate. The fact that a distinctly separate subparagraph of § 541 references property recovered by a trustee from a fraudulent transfer avoidance action under § 550, highlights Congress's intent that avoidance recoveries are not subject to § 726's distribution scheme until actually realized and brought into the estate under § 541(a)(3).[147]

## D. The Plan Trustee's Recovery is Not Capped By § 550(a).

Notwithstanding this Court's belief that the Third Circuit and *DSI Renal Holdings*

---

[145] *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) citing S. Rep. No. 989, 95th Cong., 2d Sess. 91 (1978).
[146] Adv. DE 261, page 5.
[147] *Collier on Bankruptcy* ¶ 550.02[2] at 550-8 to 550-9 (16th ed. 2011).

correctly analyzed § 550(a), this Court is bound by the Ninth Circuit's sweeping pronouncement in *Acequia* to the effect that recovery under § 550 is <u>not</u> capped at the amount of allowed creditor claims.[148] The Court questions the wisdom of applying *Acequia's* holding in a liquidation context where recovery above the amount needed to pay allowed creditor claims will provide no accompanying benefit to creditors. Debtor's confirmed liquidation Plan did not distribute to allowed creditors an equity interest in the Debtor.[149] A distribution to equity from this Adversary Proceeding will not serve to support a reorganized, operating entity, but will solely benefit Equity Holders on account of their pre-petition equity interests in the Debtor. The Court, nonetheless, must find that the Plan Trustee's transfer avoidance recovery, if any, is not limited to the amount necessary to pay all allowed creditor claims against the Debtor's estate.

## V. CONCLUSION

For the reasons stated above, Defendants' Capping Motion is hereby denied. Genuine issues of material facts exist as to the potential universe of allowed creditor claims in this case. However, to aid the parties as they continue to prepare for trial, the Court hereby advises the parties that it is compelled to find that, based on Ninth Circuit precedent, the Plan Trustee's recovery, if any, under § 550(a) in this fraudulent transfer avoidance Adversary Proceeding will not be limited by the amount of allowed creditor claims against this estate.

**IT IS ORDERED**

**DATED AND SIGNED ABOVE.**

---

[148] *In re Acequia*, 34 F.3d at 804.

[149] At the Hearing, the Court asked the Plan Trustee whether any party had traded a claim against the estate for an allowed equity interest in the Debtor. The Plan Trustee could not definitively answer the question and subsequently filed a Notice of Requested Information ("Notice") after the Hearing. Adv. DE 253. Defendants responded to the Notice, reiterating that "no party traded a creditor claim against the Debtor for an equity interest in the Debtor either in the course of the Debtor's bankruptcy proceedings or pursuant to the Debtor's Plan." Adv. DE 255.

Case 2:19-ap-00412-DPC    Doc 279    Filed 04/11/22    Entered 04/11/22 15:46:11    Desc
Main Document    Page 23 of 24

1

**To be Noticed through the BNC to:**
Interested Parties

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26